### MITCHELL v. SHARON.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1894.)

No. 124.

LIBEL AND SLANDER—WHAT ACTIONABLE—CHARGING CRIMINAL INTENT MERELY.
  Words charging another with the formation of a scheme to blackmail, and the request for money as a preliminary step in carrying out the scheme, and an intent to follow up its denial with threats, but not with the actual making of threats, are not actionable per se, the use of a threat being a necessary ingredient of the crime of extortion or the attempt to commit the same, under Pen. Code Cal. § 518.

In Error to the Circuit Court of the United States for the Northern District of California.

At Law. Action by Sarah Mitchell against Frederick W. Sharon

for slander. A demurrer to the complaint was sustained, (51 Fed. 424,) and thereupon the complaint was amended, and a demurrer to the amended complaint was sustained. Plaintiff brings error.

Henry H. Davis, for plaintiff in error.

Wm. F. Herrin, J. M. Allen, and Isaac Frohman, (Hall McAllister, on the brief,) for defendant in error.

Before GILBERT, Circuit Judge, and ROSS and HANFORD, District Judges.

GILBERT, Circuit Judge. An action was brought by the plaintiff in error to recover damages suffered by her by reason of slanderous words alleged to have been uttered concerning her by the defendant in error. It is alleged in the complaint that the defendant, being asked whether he had ever seen the plaintiff, answered as follows:

"Never, and I know very little about her. From what I do know, I can only regard her proposition for money for the letters as a blackmailing scheme, pure and simple. I have never received any communication from her, but from what I hear I suppose she has made demands upon the estate for money. Those demands have not been regarded as anything more than mere talk, the vapid emanations from an idle mind. She will wait a long time before she gets anything out of the Sharon estate for suppressing such information as she may possess. I am often approached by people who talk mysteriously about revealing matters that would be detrimental to the Sharon estate if made public, but I always send them away as soon as they begin to make blackmailing demands."

This language was sued upon as slanderous per se. The last amended complaint contains no allegation of special damage, and no innuendo. A demurrer to the complaint was sustained upon the ground that the words used are not actionable, and the plaintiff in error seeks to review that decision upon this writ of error.

By section 46 of the Civil Code of California slanderous words are actionable per se if they charge any person with crime, or with having been indicted, convicted, or punished for crime. The words in question convey no imputation of criminal indictment, conviction, or punishment, and the only question for consideration is whether they charge the plaintiff with the commission of crime. It is contended by the plaintiff in error that the words impute the crime of blackmailing, or, as it is designated in the Penal Code of California, the crime of extortion, or attempting to extort money.

Extortion is defined by section 518 of the Penal Code of California to be "the obtaining of property from another with his consent induced by a wrongful use of force or fear, or under color of official right." By section 519 it is declared that the fear referred to in the preceding section may be such as is induced by threats concerning the person or property of the individual threatened, or his relative or a member of his family,—such, among other things, as a threat "to expose any secret affecting him or them." Section 520 of the Penal Code provides:

"Every person who extorts any money or other property from another under circumstances not amounting to robbery, by means of force or any threat, such as is mentioned in the preceding section, is punishable," etc.

Section 524 provides as follows:

"Every person who unsuccessfully attempts by means of any verbal threat, such as is specified in section 519, to extort money or other property from another is guilty of a misdemeanor."

The action may be maintained, therefore, if the words used by the defendant charge the plaintiff with committing or attempting to commit extortion.

It is a fundamental principle, applicable to all cases of slander, that in determining whether the words declared upon import a charge of crime all of the language used by the defendant is to be considered. The rule is thus expressed in Townshend on Libel and Slander, (section 137:)

"The construction to be put upon any language spoken or written must be that which is consistent with the whole of the speech or writing. * * * The language of any part of an oral discourse is to be construed with reference to the entire discourse. Hence words which standing alone would be actionable may not be actionable when taken in connection with their context."

It is, as we have seen, a necessary ingredient of the crime of extortion, or the attempt to commit the same, that a threat should have been used. We may fairly infer from the first sentences of the defendant's words that the impression he intended to convey was that the plaintiff had made a proposition to part with the possession of certain letters for a money consideration. He does not say or intimate that the proposition has been accompanied by a threat. On the contrary, the words which follow indicate that as yet no threat had been made. He says he regards her proposition as "a blackmailing scheme, pure and simple,"—that is to say, that he believes the plaintiff to have made the proposition as part of a plan to blackmail; that the proposition for money is but the preliminary step, and that he expects more to come; that he expects the plaintiff to follow up the rejection of her proposition with threats,—threats of the publication of the letters,—and that that was her intention and plan from the first; that she will not let the matter rest with the rejection of her proposition, but will proceed with the prosecution of her scheme to blackmail. The words which immediately follow are in harmony with this interpretation:

"I have never received any communication from her, but from what I hear I suppose she has made demands upon the estate for money, [in exchange for the letters.] Those demands have not been regarded as anything more than mere talk, the vapid emanations from an idle mind."

The words which then follow were uttered evidently for the purpose of anticipating and answering any further demands from plaintiff, or demands accompanied with the threat of publication, and for the purpose of advising her or the person spoken to of his attitude in such a case:

"She will wait a long time before she gets anything out of the Sharon estate for suppressing such information as she may possess. I am often approached by people who talk mysteriously about revealing matters that would be detrimental to the Sharon estate if made public, but I always send them away as soon as they begin to make blackmailing demands."

It is contended by the plaintiff in error that in using the words last quoted the defendant intended to class the plaintiff with persons who had made blackmailing demands upon the Sharon estate, and by implication to say that she was also a blackmailer. We find no warrant for holding that the words were so meant by the speaker, or could have been so understood by the auditor. The words are to be taken in their obvious sense and import. It is plain that the whole purport of the reference so made to others who have demanded money from the estate is to advise the person to whom the words were spoken that, if the plaintiff should persist in her scheme, and should threaten to publish the letters unless her demands for money should be complied with, her success would be no greater than that of others who had preceded her in like schemes; that she would be sent away as soon as she began to make blackmailing demands; for he says, "I always send them away as soon as they begin to make blackmailing demands." Upon the consideration of all the defendant's words, it is impossible to find in them the charge that the plaintiff has made a blackmailing demand upon the Sharon estate, or that she has made a threat to publish the letters. It is evident that the defendant meant to say no more than that it was the plaintiff's intention to attempt to extort money from the estate by means of threats; in other words, that she intended to commit the offense made punishable by section 524 of the Penal Code, not that she had done so. The law applicable to such a case is expressed in 13 Am. & Eng. Enc. Law, 353, as follows:

"Words which merely impute a criminal intention, not yet put into action, are not actionable. Guilty thoughts are not a crime."

In Townshend on Libel and Slander (section 161) it is said:

"A purpose or intent to do an unlawful act, without any act being done, is not punishable criminally. * * * It is not actionable orally to charge one with a mere intent to commit an offense."

The defendant has not charged the plaintiff with the commission of any act which, coupled with the criminal intent to blackmail, would, if true, render the plaintiff liable to indictment. The act of proffering the letters for sale is not such an act. That act is not unlawful in itself, and it has no necessary connection with an unlawful purpose. The test to be applied is whether the act is such that, taken together with the intent, an offense against the criminal statutes has been committed. The plaintiff could not have been prosecuted criminally for demanding money for the letters even if she cherished at the same time the purpose to threaten the defendant with the publication of the same.

In the case of Fanning v. Chace, 17 R. I. 388, 22 Atl. 275, the words declared upon were, "He is going to start a house of ill fame, so sign a protest against him." The court said:

"The main question raised by the demurrer is this, viz.: Are words actionable which merely impute a criminal intention to another? We think this question must be answered in the negative. Words which falsely charge a person with the commission of a criminal offense are actionable upon the familiar ground that they may endanger him by subjecting him to the penal-

ties of the law, and render him infamous in the community. But the charge, in order to be obnoxious to the law, must be of an offense actually committed or attempted; a punishable offense, and not of an offense existing in contemplation or intention merely."

In Bays v. Hunt, 60 Iowa, 251, 14 N. W. 785, the defendant had said to the plaintiff: "I believe you will steal. You are religiously and politically dishonest." The court said:

"But the expression 'you will steal' is not to be regarded as an allegation that defendant did steal or has stolen. It expresses the thought that in the future he will commit the crime; that he possesses the qualities of heart which will lead to the crime, and the purpose to commit it, when opportunity therefor arises. It is plain that the words do not imply a charge of the crime committed in the past."

The same principle was held applicable in McKee v. Ingalls, 4 Scam. 30, where the words declared upon were: "You are a damned thief. If you have got money, you stole it. I believe you are a damned thief. I believe you will steal."

The judgment is affirmed, with costs to the defendant in error.